**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

**CIVIL ACTION NO:**
**05-513ML.**

**PAUL J. JENKINS**

**VS.**

**MARGARET DAVIS MULLEN**
**WILLIAM F. MULLEN**
**JOHN DOE**
**STEVEN DINEZZA**
**LEA DINEZZA**
**PAUL GILMORE**
**AFFORDABLE FUNDING MORTGAGE CORPORATION**
**RICHARD COSTA**
**ARGENT MORTGAGE COMPANY, LLC**

**PLAINTIFF'S CONSOLIDATED MEMORANDUM: (1) IN OPPOSITION TO MULLEN'S MOTION TO DISMISS UNDER RULES 9(B) AND 12(b) (6); (2) IN SUPPORT OF PLAINTIFF'S MOTION FOR THE COURT TO RECONSIDER IT'S DISMISSAL OF THE COMPLAINT AGAINST ARGENT.**

## I. INTRODUCTION

The Court's sweeping ruling in its April 7, 2006 opinion dismissing the complaint against Argent has caused the Plaintiff to move the emphasis of this memorandum more towards the underlying facts of the case and away from yet another rehash of Rico. While the plaintiff admits to not drafting a perfect complaint, he still maintains that one does not need to possess shamanistic powers of divination to discern a cause of action here. With that in mind, many bates numbered exhibits have been annexed to this brief and made a part hereof. Plaintiff has drafted a refreshed, document-centered statement of

facts, which clearly establish the commission of multiple predicate acts such as mail fraud, wire fraud, embezzlement and financial institution fraud. Plaintiff cannot make further specifications as to specific acts, mailings, faxes or money transfers without the tools of limited discovery. **See Wright & Miller** note 46 S1233. The attached exhibits also evince more than a single scheme involving one party, and portray a pattern of racketeering activity by an ongoing association in fact. Similarly, a clear case of fraud emerges from these documents.

## II. STATEMENT OF FACTS

Defendant "John Doe" is in actuality a real estate broker named Stuart B. Rothman, a principal of "Real Property Solution, Inc." Plaintiff reached a partial and separate settlement with Rothman in April of 2005. At all material times herein Rothman, as a real estate broker, acted as an agent and cohort of Dinezza.

As originally structured, what both Argent and the Court have euphemistically characterized as a "real estate deal gone bad,"[1] specified a purchase price of $148,900.00 with Plaintiff to obtain a mortgage in the amount of $134, 010.00 (pp. 12-21). Rothman initially lured Plaintiff to the property with his standard "take over mortgage regardless of credit" ad in the Providence Journal.[2] Rothman apparently has some relationship with a party named "Eric Ahlberg," who formerly traded as "Take Over Mortgage Corp, America" (p. 9). Standard purchase and sale language indicated that the contract reflected the "final understanding of the parties" and could be altered only by written instrument signed by both parties (p. 21). However, a variety of documents, including the appraisal (p. 28), one of the two conflicting RESPA statements (p. 53), and the curious "side

---

[1] To state that this was a "real estate deal gone bad" is tantamount to describing hurricane Katrina as a bad rainstorm.

[2] Rothman still runs these ads as of April 30th, 2006 (see p. 7.1)

agreement" (p. 58) reference cash payments of anywhere from $5,000.00 to $7,000.00 going from Dinezza to Plaintiff. Since neither Plaintiff nor Dinezza ever agreed in writing to modify the original contract, the side agreement's in effect tries to return to original terms that had never legally been altered. In any event, Plaintiff never received any such funds from Dinezza; there was no "under the table" rebate to the Plaintiff.

The RESPA version given to Plaintiff by Mullen reflects Plaintiff's total earnest money advanced as $16, 256.56 (p. 53); the RESPA given to Plaintiff by Argent pegs Plaintiff's earnest money as $23, 559.76 (p. 54). The plaintiff only signed one RESPA statement, so it remains to be seen what Mullen actually submitted to Argent. The discrepancy between the two figures is approximately $7,000.00, a troubling and problematic recurring sum.

On or about April 28, 2003 Argent mailed plaintiff a "Good Faith Estimate of Closing Costs" which stated the contract sale price as $145,000.00 (p. 44). Both Rothman and Costa[3] derided this document as an "error." By the time Argent generated and mailed its so-called "final" loan documents, the purchase price had further morphed to $140,000.00 (p. 48). However, if we believe the appraisal prepared by Gilmore on March 17, 2003, the purchase price already had been reduced to $140,000.00 (p. 28). The appraiser takes pains to state that a copy of the contract was not made available to him, yet he goes on to describe a $7,000.00 cash buy-down of closing costs going from Dinezza to Plaintiff, which became a central assumption of his appraisal[4] (p. 28). Gilmore seemingly feels that he "answered" Plaintiff's complaint by his letter of January 19, 2006, where he also informed Plaintiff that he met Rothman at the subject premises on March 6, 2003, at

---

[3] Costa being an agent of the mortgage broker "Affordable."

[4] In the most negative light the appraisal can be construed to compute the property value to be only $133,000.00.

which time Rothman paid him his standard fee of $250.00 (p. 40). Plaintiff was not present on March 6, 2003, but he did, on Rothman's instructions, mail Gilmore a money order for $250.00 for his standard fee on March 11, 2003 (p. 41).[5] Obviously, these facts disrupt Gilmore's time line and raise questions as to the acceptance of gratuities. Why Argent ever considered funding this loan at $145,000.00 (p. 44) given this appraisal escapes this writer. When it mailed Plaintiff this appraisal Argent included cover letter language claiming that the document was confidential and not to be disclosed to third parties (p. 25-26); Plaintiff happily disregarded this self-serving language.

For its part, Argent, despite having worked up the numbers for this deal with at least two different purchase prices, cried foul on May 16, 2005, claiming, in effect, having been fraudulently deceived as to the "side agreement" and second mortgage. Argent went on to state that it might well not have funded the loan had it known the true facts (p. 72). Argent and its affiliate Ameriquest had no such strident reaction when plaintiff informed them of the "true facts" on November 7, 2003 (p. 70). One could logically conclude that Argent's lack of a response in 2003 indicated that they were well aware of what had transpired.

As to which Attorney Mullen actually conducted this closing, it appears that Margaret ("Peggy") Davis Mullen notarized both Argent's loan documents as well as Dinezza's warranty deed (p. 60-61). "Peggy" Davis Mullen is also listed as Argent's email contact for the "Mullen Law Office" (p. 47). It cannot be stated with a straight face that "Peggy" Davis Mullen played no essential role in the closing. However, the said William F. Mullen conducted the "second" closing to secure a second mortgage for Mullen's cohort,

---

[5] Perhaps Gilmore's standard practice is to be paid twice.

client and business partner, Stuart B. Rothman, as evidenced by William F. Mullen's notarizing of the second mortgage deed (p. 66).

In early 2005 Rothman became subject to a "show cause" order issued by the Rhode Island Department of Business Regulation, or "DBR" (p. 1). The DBR lists Rothman's alleged breach of regulations, which forbid such conduct as "substantial misrepresentation," "fraudulent conduct," "acting for more than one party," and receiving "undisclosed commissions and rebates" (p. 2). The DBR was cognizant of the similarity of Plaintiff's situation with another episode of a "take over mortgage scam," the case of Aurelio v. Rothman DBR No. 03-0073 (p. 2). Cynthia Aurelio Markle also filed suit against Real Property Solutions, Inc, Stuart Rothman and William F. Mullen in a real property action in Rhode Island Superior Court (p. 7).

According to the Better Business Bureau web site, Real Property Solutions, Inc. employs two individuals, John C. Shelton and Attorney William Mullen[6] (p. 8). Although Plaintiff was not yet able to obtain a copy of the recorded instrument from the City of Providence Recorder's Office, there is a document on file revealing William F. Mullen and John C. Shelton as signatory principals of SR Associates, one of Rothman's many ventures (p. 10-11). Despite the evident disfavor of the DBR, Rothman still runs his "take over mortgage regardless of credit" ads, the most recent one being in the Providence Sunday Journal of April 30th, 2006 (p.7.1). Stewart Title terminated William F. Mullen as their title agent in the summer of 2003 for undisclosed reasons, although Stewart described the subject attorney as "being slick" and "having done some things." One thing William F. Mullen definitely did was misrepresenting to Stewart in his

[6] The BBB web site does not specify whether this Attorney Mullen is the defendant in this suit, the elder William F. Mullen or Attorney William G. Mullen. Stuart Rothman replaced William G. Mullen as the President of Real Property Solutions, Inc subsequent to the events of this matter.

certification that there was no second mortgage. Plaintiff's closing was so irregular that Stewart readily agreed to reverse the over-priced and unwanted owner's title policy in May of 2005.

One party to this fraud fest who may, up until now in any event, have come out quite well is Dinezza, who grossed proceeds of nearly $64,000.00 according to one of the RESPA statements (p. 53). This windfall made possible, at least in part, by Dinezza's acquisition[7] of the real estate from one Amy Efros Busse for $70,000.00 on May 9, 2002; Ms. Efros Busse had acquired the property from the sick and elderly Margaret Unsworth for $68,500.00 on March 13, 2001 (p. 23.1). Efros Busse and Dinezza both held title for approximately a little over a year, with the former maybe grossing $1,500.00 and the latter grossing almost $64,000.00. Dinezza could either be a talented amateur or "slick," but the words "real estate flip" come to mind.

Of course, these kinds of events should be expected when dealing with a predacious lender such as Argent, who pitch these "hard money" loans to low-end purchasers. The Plaintiff has attached some choice web articles on Argent, an unsavory lender with a checkered past, replete with class actions, regulatory troubles, lawsuits, forgeries, and corrupt "boiler room" loan shop operations (pp. 74-84).

Argent markets loans via the use of brokers, such as the defendant Affordable Funding. In the case at hand, Affordable worked the scheme on behalf of itself, Rothman and Argent, but it managed not to leave many footprints. Plaintiff can state that the "John McMahon" who allegedly took Plaintiff's "loan application" may be a real person or a fictitious name (p. 62); Plaintiff can state conclusively that the only he ever spoke to

---

[7] Acquisition maybe the wrong word. Both prior transactions, Dinezza-Efros Busse and Efros-Busse-Dinezza, were well below market. Plaintiff wonders how many RESPA these prior transactions had.

from either Argent or Affordable identified himself as Richard Costa, not John McMahon.

**CONCLUSIONS**

In the interests of justice, this Court should reconsider its decision of April 7, 2006, and deny Argent's Motion to Dismiss.

In the alternative, since the Court apparently dismissed Plaintiff's claim against Argent with prejudice, the Court should allow the Plaintiff to reformulate his pleadings and file an amended complaint no later than June 7, 2006. Trial court's generally give plaintiff's at least one chance to amend their complaint. **Moore's** at 15.10.

Since the Court has yet to rule on the other 12(b)(6) motions and no responsive pleadings have been filed, Plaintiff has a right to amend his complaint as to the defendants other than Argent, **F.R.C.P. 15(a).**

Dated: April 30th, 2006

Respectfully submitted by the plaintiff,

**Pro se**

Paul J. Jenkins
PO Box 315
Providence, RI 02901-0315
Phone & Fax 401-861-0416

Table of Contents


| Exhibit | Bates Range |
|---|---|
| 1. Show Cause Order from RI DBR Re Rothman | 1-4 |
| 2. Affidavit submitted to RI DBR Re Rothman | 5-6 |
| 3. RI Superior Court Docket Entry Re Rothman & Mullen | 7 |
| 4. Providence Journal Rothman ad 4/30/06 | 7.1 |
| 5. Better Business Profile of Real Property Solutions, Inc. | 8 |
| 6. D & B/Hoovers search results Re "Real Property Solutions" | 9 |
| 7. MA SOS Summary Screen Re "S & R Associates" | 10-11 |
| 8. Accepted Offer to Purchase | 12-13 |
| 9. Purchase and Sale Agreement | 14-21 |
| 10. Sales History Report 107 Hendrick Street | 22-23.1 |
| 11. Letter to Ameriquest re appraisal report | 24 |
| 12. Ameriquest "nondisclosure letter" | 25-26 |
| 13. Appraisal Report | 27-39 |
| 14. Letter from appraiser Paul Gilmore | 40 |
| 15. Money order receipt re Paul Gilmore | 41 |
| 16. Good Faith Estimate and other document re $145,000.00 deal | 42-44 |
| 17. Faxes to Richard Costa and Stuart Rothman | 45-46 |
| 18. Email contact for Mullen Law Offices | 47 |
| 19. Escrow instruction re the $140,000.00 deal | 48 |
| 20. Letter to Ameriquest re RESPA statement | 49 |
| 21. Certified check receipt for $17,341.90 | 50 |

| | |
|---|---|
| 22. The $28, 258.80 good faith estimate | 51 |
| 23. The $16,256.56 cash from borrower RESPA | 52-53 |
| 24. The $23,559.96 cash from borrower RESPA | 54-55 |
| 25. Purchase debts and disbursements | 56 |
| 26. Warranty deed notarized by Peggy Davis Mullen | 57 |
| 27. The "Side Agreement | 58 |
| 28. Loan terms acknowledgment | 59 |
| 29. Closing documents notarized by Peggy Davis Mullen | 60-61 |
| 30. John McMahon? | 62 |
| 31. Second mortgage deed notarized by William F. Mullen | 63-66 |
| 32. Second mortgage discount negotiations | 67-69 |
| 33. Complaint letter to Ameriquest | 70 |
| 34. Letter from Stewart Title | 71 |
| 35. Letter from Argent claiming fraud | 72-73 |
| 36. Articles re Argent's predatory lending | 74-84 |