UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PAUL J. JENKINS,
Plaintiff,

v. C.A. No. 05-513

MARGARET DAVIS MULLEN;
WILLIAM F. MULLEN; JOHN DOE;
LEA DINEZZA; STEVEN DINEZZA;
PAUL GILMORE; AFFORDABLE
FUNDING MORTGAGE CORPORATION;
RICHARD COSTA; and ARGENT
MORTGAGE COMPANY, LLC,
Defendants.

# MEMORANDUM AND ORDER

This matter is before the Court on motions to dismiss filed by Defendant Steven Dinezza; Defendants Margaret Davis Mullen and William F. Mullen ("Mullens"); Defendant Lea Dinezza; and Defendant Affordable Funding Mortgage Corporation ("Affordable"). The motions to dismiss are made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' Motions to Dismiss as to Counts I, II, and III are all granted. Count IV is dismissed without prejudice.

## I. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), "a court must take the allegations in the plaintiff's pleadings as true and must make all reasonable inferences in favor of the plaintiff." Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (citing Pena-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004)). Dismissal is appropriate "only if it is clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations." Rivera, 402 F.3d at 33 (internal quotation marks omitted). The Court need not accept, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like . . ." when evaluating a plaintiff's allegations. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (citations omitted). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. Id. at 23 (citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

"A pro se litigant, like any litigant, is guaranteed a meaningful opportunity to be heard." Eagle Eye Fishing Corp. v. United States Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 437 (1982)). As a rule, however, pro se complaints are held to less stringent standards than the formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Nevertheless, pro se litigants are not excused from compliance with procedural rules or substantive law. Eagle Eye Fishing Corp., 20 F.3d at 506.

## II. Background

The Complaint, for the most part, tracks statutory language without specific mention of the actors in this case or any other details. In essence, Plaintiff claims to have been "defrauded" and "over-charged" during the course of a real estate transaction by the Defendants, who he believes conspired against him. In March 2003, Plaintiff agreed to purchase a house from Steven and Lea Dinezza ("Dinezzas") located at 107 Hendrick Street in Providence. Plaintiff claims that

the purchase price was $148,900. The terms and conditions of the sale were negotiated by the Dinezzas' real estate agent, John Doe ("Doe"). In order to purchase the house, Doe helped Plaintiff secure a loan through Affordable, a mortgage broker, and Richard Costa ("Costa"), an employee of Affordable. The funds for the loan were provided by the lender, Argent Mortgage Company, LLC ("Argent"). During the closing process, the house was appraised by Paul Gilmore ("Gilmore") at a value of $140,000. Argent selected the Mullens as its closing agents.

Plaintiff makes numerous allegations of deceptive or questionable real estate practices during the course of this transaction. For example, Plaintiff claims that he was told by Doe and Costa that Argent would not advance Plaintiff sufficient funds to purchase the house because of his credit problems. Plaintiff asserts that in order to secure the loan from Argent, Doe proposed that Plaintiff pay his commission, instead of the Dinezzas, by securing a second mortgage of $8,900. As a result, the price of the house would be reported to Argent as $140,000. In addition, Plaintiff claims that the amount required to purchase the house was obtained from Argent by reporting that the Dinezzas had paid Plaintiff $5,000 towards the closing costs, when in reality, this money never exchanged hands. Plaintiff also claims that the closing costs continued to rise as part of an "illegal closing cost mark up scheme, implementing excess charges for legal fees, costs and title insurance commissions." (Pl.'s Compl. pg. 4 ¶ 19).

On December 9, 2005, Plaintiff filed a Complaint in this Court. In his Complaint, Plaintiff makes the same claims against all Defendants: (Count I) Acquisition and Maintenance of an Interest in and Control of an Enterprise Engaged in a Pattern of Racketeering Activity pursuant to 18 U.S.C. § 1962(b); (Count II) Conduct and Participation in a RICO Enterprise

through a Pattern of Racketeering Activity pursuant to 18 U.S.C. § 1962(c); (Count III) Conspiracy to Engage in a Pattern of Racketeering Activity pursuant to 18 U.S.C. § 1962(d); and (Count IV) Fraud and Deceit.

## III. Discussion

On April 7, 2006, the Court issued a Memorandum and Order granting Defendant Argent's Motion to Dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The Court has reviewed each of the instant motions to dismiss, including supporting memoranda from the four Defendants and Plaintiff's response to each motion.[1] The Court concludes that no consequential differences exist between the allegations and arguments made against Argent, and the allegations and arguments made against the current Defendants in Counts I, II, and III. Accordingly, the Court adopts the same analysis it used in its April 7, 2006, Memorandum and Order as to Counts I, II, and III of Plaintiff's Complaint, which the Court summarizes below.

### A. Counts I, II, and III: The RICO Charges

To state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima, S.P.R.L. v. Imrex Co., 473

[1] Defendants' Motions to Dismiss, including their supporting memoranda, are virtually identical with respect to their arguments against Plaintiff's federal claims. Plaintiff's memoranda in opposition to Defendants' motions are also very similar to each other. In fact, Plaintiff files only one memorandum addressing both Affordable and Dinezza's arguments, and this memorandum is identical to the one filed in opposition to the Mullens' motion, with the addition of three pages entitled "Perversions of Fact and Law Advanced by Affordable." In essence, the names may change but the arguments remain the same.

U.S. 479, 496 (1985); Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005). "Racketeering activity" means any act that violates the state and/or federal criminal laws enumerated in 18 U.S.C. § 1961(1). Giuliano, 399 F.3d at 386. This list is exhaustive, and includes mail fraud and bank fraud pursuant to 18 U.S.C. §§ 1341 and 1344. 18 U.S.C. § 1961(1)(B). Common law fraud and deceit, however, do not constitute "racketeering activity" under RICO. Fleet Credit Corp. v. Sion, 893 F.2d 441, 445 (1st Cir. 1990).

Although a brief mention is made in the introductory section of the Plaintiff's Complaint of a "pattern of racketeering alleged herein, e.g. mail fraud and bank fraud," the Plaintiff offers no factual allegations as to any Defendant to suggest when, how, or where such frauds may have occurred. (Pl.'s Compl. pg. 2). Without allegations of criminal activity as enumerated in the RICO statute, Plaintiff cannot sustain a claim of "racketeering activity." See Fleet Credit Corp., 893 F.2d at 444 (finding no obligation for the Court to "conjure up unpled allegations in order to bolster the plaintiff's chances of surviving a 12(b)(6) motion to dismiss.") (citations and internal quotation marks omitted).

The statute defines an "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has stated that an enterprise is shown by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981). The Supreme Court further defined the informal enterprise as "a group of persons associated together for a common purpose of engaging in a course of

conduct. . . . [I]t is an entity separate and apart from the pattern of activity in which it engages." Id.

Plaintiff has not alleged any facts indicating that the named Defendants functioned as an ongoing unit, constituted an ongoing organization, or shared a common purpose. Certainly, some of Plaintiff's allegations might be read to imply a concerted effort to defraud him of property; however, these allegations lack indicia of an ongoing or continuing organization. Moreover, Plaintiff's Complaint alleges only facts that narrowly concern the fraud allegedly perpetrated against him in the one real estate transaction at hand. Plaintiff's failure to describe any conduct beyond the fraud at issue means Plaintiff has not successfully alleged that the Defendants are an entity separate and apart from the pattern of activity in which it engages. Ultimately, because Plaintiff fails to sufficiently allege an ongoing organization separate and apart from the activity it conducts, his RICO claim of enterprise must fail.

The RICO statute defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" committed within ten years of each other. 18 U.S.C. § 1961(5). The Supreme Court has interpreted the "pattern" requirement to mean a plaintiff must allege that the predicate acts of racketeering activity are related and that they amount to or pose a threat of continued criminal activity. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989). The First Circuit has consistently rejected RICO claims that describe sporadic, unrelated criminal activity, or criminal activity that, by virtue of focusing on a single scheme to achieve a discrete goal, does not by its nature indicate a threat of continuing indefinitely into the future. Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 19 (1st Cir. 2000) (listing cases).

Even if the conduct described by Plaintiff's allegations could be classified as predicate acts under RICO, the brief time span of the action involved, and the fact that only Plaintiff was targeted as a victim would preclude the finding of a pattern. At most, Plaintiff's Complaint describes a scheme to defraud him of property. Courts have been clear that claims of a pattern where the alleged racketeering acts, taken together, comprise a single effort to facilitate a single financial endeavor cannot amount to a pattern of racketeering activity. Efron, 223 F.3d at 19 (citations and internal quotation marks omitted).

Because Counts I and II assert ownership of a share in a RICO enterprise and participation in a RICO pattern of racketeering activity, the deficiencies of Plaintiff's Complaint, as detailed above, are fatal to those claims. Count III of Plaintiff's Complaint, however, asserts that all of the Defendants conspired to engage in a pattern of racketeering activity. This count fails because nowhere in Plaintiff's Complaint is there an allegation of a knowing agreement by any of the Defendants to commit the predicate acts, as is required in a claim of conspiracy. Miranda v. Ponce Fed. Bank, 948 F.2d 41, 47-48 (1st Cir. 1991) ("To succeed, a RICO conspiracy claim must charge that defendants knowingly entered into an agreement to commit two or more predicate crimes.") (citation omitted). Nor does Plaintiff allege any communications among the Defendants which might raise an inference of an agreement between them. For this reason, Count III is also fatally flawed.

**B. Count IV: State law claim**

Plaintiff alleges in Count IV of his Complaint that "[a]ll [D]efendants jointly and severally and with scienter misrepresented the actual costs, nature, terms and purchase price of

the subject properly causing justifiable reliance by the plaintiff." (Pl.'s Compl. pg. 8-9). Having disposed of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over his sole remaining state law claim. 28 U.S.C. § 1367(c)(3); see United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided . . . . Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); see also McCloskey v. Mueller, 446 F.3d 262, 272 (1st Cir. 2006); Martinez v. Colon, 54 F.3d 980, 990-91 (1st Cir. 1995). Accordingly, Plaintiff's claim of common law fraud and deceit is dismissed without prejudice.

## IV. Conclusion

For the foregoing reasons, Plaintiff has failed to state a claim as to Counts I, II, and III of his Complaint. Furthermore, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim in Count IV. Defendants' Motions to Dismiss as to Counts I, II, and III are all GRANTED. Count IV is dismissed without prejudice.

SO ORDERED.

Mary M. Lisi

Mary M. Lisi
United States District Judge
October 16, 2006